# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| LESTER STOVALL,<br><br>    Plaintiff,<br><br>v.<br><br>H&S BAKERY,<br><br>    Defendant. | Civil Action No. TDC-20-3234 |

## MEMORANDUM OPINION

Plaintiff Lester Stovall, a former employee of Defendant H&S Bakery, has filed this civil action alleging that he was subjected to race discrimination, a hostile work environment, and retaliation in the workplace, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17 (2018), and 42 U.S.C. § 1981 ("§ 1981"), and that his termination by H&S Bakery constituted intentional infliction of emotional distress, malicious interference with economic advantage, and wrongful termination in violation of state public policy. Pending before the Court is H&S Bakery's Motion to Dismiss and Stovall's Motion for Pre-Trial Discovery. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion to Dismiss will be GRANTED, and the Motion for Pre-Trial Discovery will be DENIED AS MOOT.

## BACKGROUND

The following facts alleged in the Complaint are presented in the light most favorable to Stovall, the non-moving party.

Stovall, who is African American, first started his employment with H&S Bakery in March 1994. In 2018, another bakery, the Ottenburg Bakery, closed down, and an Ottenburg supervisor, David Barnes; an Ottenburg sales manager, Maurice Graham; and several Ottenburg drivers came to work for H&S Bakery. Stovall alleges that at the time, H&S Bakery drivers were informed that although there would be some changes, they would not lose their routes, but instead, Barnes and Graham "cherry picked all the lucrative stops to create new routes" for the former Ottenburg drivers. Compl. at 3, ECF No. 1. This change violated company policy, under which routes were assigned through a bid process. Stovall approached both Barnes and Graham to express his concern about this issue, but both denied any wrongdoing. Stovall then requested to speak to H&S Bakery President John Paterakis, Jr. about the changes and also wrote a letter to Paterakis outlining his objections to the violations of company policy.

In Stovall's letter, dated May 9, 2018, Stovall asserted that the reassignments violated the "Equal Employment Policy" and "Employee Handbook," which Stovall summarized as providing that "if a vacancy occurs on a route or a new route is created, such route shall be posted for bid," and that bids would "be reviewed based on the bidder's length of service with the company, their job performance history, and ability to perform the job where a vacancy exists." Compl. Ex. A at 1, ECF No. 1-1. Stovall stated that in violation of these policies, he was reassigned from a Maryland-based route to a Virginia-based route that was not feasible to complete because of time constraints on delivering products in Washington, D.C. He requested that to address these "Policy and Handbook violations," Paterakis reconsider the company's "decision to arbitrarily change [his] salesman route" and reassign him back to his former route. *Id.* at 1-2.

Stovall alleges that after this interaction with Paterakis, Barnes, who was Stovall's new supervisor, put him under increased surveillance because of his complaints about the route changes

and retaliated against Stovall "because of [his] race." Compl. at 2. According to Stovall, Barnes is African American. As examples of the retaliation, Stovall asserts that when his hand-held computer used to generate receipts for customers stopped working, H&S Bakery never repaired it, such that Stovall was forced to complete handwritten tickets for customers, which increased his workload. When another driver's vehicle had mechanical issues, H&S Bakery gave Stovall's truck to the other driver and required Stovall to use a spare truck, despite Stovall's seniority and the prevailing practice of giving the spare truck to the driver who had the vehicle problem. Stovall was also "written up" because his personal cell phone battery died. *Id.* at 5.

On August 3, 2018, Stovall was terminated under circumstances that he alleges were retaliatory. After an accident during which Stovall was driving a company vehicle, he was required to report for mandatory drug testing on July 28, 2018 but was given the incorrect lab paperwork. Although the lab technician called Barnes to inform him that Stovall could not take the drug test due to the error, and Stovall received the correct form from Barnes on the next business day and then took the test, Barnes fired Stovall based on the claim that he had "refused to take the test." *Id.* After his termination, Stovall never received a $1,000 surety bond he had posted when he first was hired, to be returned upon separation from employment, even though he owed no money to H&S Bakery. Stovall alleges that as a result of his termination, he has suffered mental and physical distress, grief, shame, humiliation, and loss of consortium.

On October 20, 2018, Stovall filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). On August 5, 2020, the EEOC informed Stovall that it was unable to conclude that there was an actionable violation, and on August 8, 2020, Stovall received a right-to-sue notice from the EEOC. Stovall filed the Complaint in this case on November 6, 2020. In the Complaint, Stovall alleges race discrimination, a hostile work

3

environment, and retaliation under Title VII and under § 1981, as well as state law claims of intentional infliction of emotional distress, malicious interference with economic advantage, and wrongful termination.

## DISCUSSION

In its Motion to Dismiss, H&S Bakery seeks dismissal of this action under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process, and under Rule 12(b)(6) on the grounds that Stovall has failed to allege sufficient facts to state a plausible claim for relief on any of his causes of action.

### I. Legal Standards

Federal Rules of Civil Procedure 12(b)(5) authorizes dismissal of a case for insufficient service of process. A plaintiff defending against a Rule 12(b)(5) motion bears the burden to demonstrate that service was adequate. *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010); *Danik v. Housing Auth. of Balt. City*, 396 Fed. App'x. 15, 16 (4th Cir. 2010) (citing *Dickerson*, 604 F.2d at 740). If a court determines that service of process is insufficient, the Court has broad discretion to determine whether dismissal under Rule 12(b)(5) is warranted. *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992). Dismissal is generally inappropriate "when there exists a reasonable prospect that service may yet be obtained." *Id.* Although the "plain requirements for the means of effecting service of process may not be ignored," a "technical violation of the rule" or "failure of strict compliance may not invalidate the service of process" when a defendant has received actual notice of a case. *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984).

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is

4

plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Ctny.*, 407 F.3d 266, 268 (4th Cir. 2005). In deciding a Rule 12(b)(6) motion, the Court may consider documents "attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

## II. Service of Process

H&S Bakery first argues that the Complaint should be dismissed under Rule 12(b)(5) because on Stovall's return of service form stating that the summons had been served, he did not specify that the Complaint was served, he did not attach proof of delivery, such as a return receipt, and he did not demonstrate that the person he served was the proper person to receive service on behalf of H&S Bakery.

Although in December 2020, Stovall submitted a return of service form reporting service by certified mail, restricted delivery, he has since clarified that he first served H&S Bakery by FedEx on November 7, 2020, one day after the Complaint was filed. Although Federal Rule of Civil Procedure 4 does not directly allow for service by mail or by FedEx, it allows for service upon a corporation according to processes allowed by the state in which the district court is located. *See* Fed. R. Civ. P. 4(h)(1)(A); 4(e)(1). For service of a corporation, Maryland law allows a copy of the summons and complaint to be sent to the "resident agent, president, secretary, or treasurer" of the organization via "certified mail requesting: 'Restricted Delivery—show to whom, date,

5

address of delivery.'" Md. Rule 2-121(a); Md. Rule 2-124(d). However, failure to send the summons and complaint through certified mail, and failure to request restricted delivery, renders service defective even if the defendant receives actual notice of the suit. *See Md. State Firemen's Ass'n v. Chaves*, 166 F.R.D. 353, 355 (D. Md. 1996) (finding that service of process was invalid where the plaintiff used first class, rather than certified, mail to send the complaint and summons to the defendant); *Quann v. Whitegate-Edgewater*, 112 F.R.D. 649, 653–54 (D. Md. 1986) (finding service of process insufficient where the plaintiff's certified mailing did not request "restricted delivery" as required under Maryland Rule 2-121(a)).

Here, Stovall, did not provide proof of service by certified mail, restricted delivery and in fact used FedEx, which is not an authorized means of service. Subsequently, on May 27, 2021, Stovall refiled his return of service form, this time including two U.S. Postal Service return receipts dated on or after May 21, 2021, but these return receipts did not state on their face that the service type was by "certified mail" or "certified mail restricted delivery," and they were dated outside the 90-day period for service. *See* Return of Service, ECF No. 18; Fed. R. Civ. P. 4(m). Where Stovall has not provided proof that he mailed the summons and the Complaint to H&S Bakery by way of certified mail, restricted delivery, as required by Maryland Rule 2-121(a) and within the required time period for service, the Court finds that the service was defective. *See Md. State Firemen's Ass'n*, 166 F.R.D. at 355; *Quann*, 112 F.R.D. at 654.

Despite this insufficiency, however, the Court finds that dismissal under Rule 12(b)(5) is not warranted. There is no dispute that Stovall promptly sent the summons and the Complaint by FedEx to H&S Bakery's Human Resource Manager in November 2020, and H&S Bakery has not claimed that it did not actually receive both documents or that it did not receive actual notice of these proceedings. The fact that H&S Bakery retained counsel who entered an appearance in this

6

case on December 2, 2020 confirms that it received actual notice and has not been disadvantaged in any way by the fact that Stovall, perhaps not appreciating the legal distinction, sent the summons and the Complaint by FedEx rather than certified mail, restricted delivery. *See Umbenhauer*, 969 F.2d at 30 (stating that district courts have broad discretion to decide whether the circumstances warrant dismissal of the complaint for service deficiencies). The fact that Stovall is self-represented also weighs against dismissal. *See McCreary v. Vaughan-Bassett Furniture Co., Inc.*, 412 F. Supp. 2d 535, 537 (M.D.N.C. 2005) (stating that on the issue of service, "the court should allow a *pro se* litigant a certain amount of lenity that is not afforded to represented parties"); *see also Christ v. Mayor of Ocean City*, No. WMN-15-3305, 2016 WL 1117403, at *3 (D. Md. Mar. 21, 2016). Because Stovall is self-represented, diligently arranged to provide timely, actual notice of these proceedings to H&S Bakery, and engaged in only technical violations of the service requirements, the Court declines to dismiss this case and deny Stovall the opportunity to have his case decided on the merits. *See Armco*, 733 F.2d at 1089.

## III. Title VII

H&S Bakery argues that Stovall has failed to state a plausible Title VII claim for race discrimination or a hostile work environment based on race. Title VII makes it unlawful for an employer "to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

### A. Race Discrimination

To evaluate Title VII claims in the absence of direct evidence of discriminatory intent, courts apply the burden-shifting analysis outlined in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802, 804 (1973). *See Adams v. Trs. of the Univ. of N.C.–Wilmington*, 640 F.3d 550,

7

558 (4th Cir. 2011). The burden is first on the plaintiff to establish a *prima facie* case of discrimination. *Id.* Upon such a showing, the burden shifts to the employer to assert a "legitimate, nondiscriminatory reason" for the allegedly discriminatory conduct. *Id.* (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004)). If the employer makes that showing, the burden shifts back to the plaintiff to demonstrate that the employer's purported reasons are a "pretext for discrimination." *Id.* at 558–59 (quoting *Hill*, 354 F.3d at 285).

To establish a *prima facie* claim of race discrimination based on disparate treatment, a plaintiff must present facts demonstrating that: (1) the plaintiff is a member of a protected class; (2) the plaintiff's job performance was satisfactory; (3) the plaintiff was subjected to an adverse employment action; and (4) similarly situated employees outside the protected class received more favorable treatment. *White v. BFI Waste Svcs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004). For a claim of discriminatory termination, the elements are that: (1) the plaintiff was a member of a protected class; (2) the plaintiff was terminated; (3) at the time of the termination, the plaintiff was performing at a level that met the employer's legitimate expectations; and (4) the position was filled by a similarly qualified applicant from outside the protected class. *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003). Although a plaintiff does not necessarily need to allege facts sufficient to establish all elements of a *prima facie* case under Title VII in order to avoid dismissal under Rule (12)(b)(6), a plaintiff nevertheless must plead facts sufficient to support a reasonable inference that an adverse employment action was motivated by bias or discrimination. *See McCleary–Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584–85 (4th Cir. 2015).

There is no dispute that Stovall, an African American man, is a member of a protected class. "An adverse employment action is a discriminatory act that 'adversely affects the terms, conditions, or benefits of the plaintiff's employment.'" *Holland v. Washington Homes, Inc.*, 487

F.3d 208, 219 (4th Cir. 2007) (quoting *James v. Booz–Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)). Examples of adverse employment actions include "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999). Such a "tangible employment action in most cases inflicts direct economic harm." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762 (1998). Accordingly, actions that do not cause a "decrease in compensation, job title, level of responsibility, or opportunity for promotion" ordinarily do not constitute adverse employment actions under Title VII. *Boone*, 178 F.3d at 256–257. Here, Stovall's termination clearly qualifies as an adverse employment action. As to the other allegedly adverse actions, including that Stovall was reassigned to an unfavorable delivery route, did not receive a timely repair of his hand-held computer, and was required to use a spare truck when a co-worker's truck broke down, Stovall has not alleged facts to support the conclusion that these actions impacted his pay, job title, opportunities for promotion, or other terms, conditions, or benefits of employment. *See id.* at 255. Because Stovall has not alleged sufficient facts to show that these actions were adverse employment actions within the meaning of Title VII, the Court will limit its analysis of race discrimination to the issue of Stovall's termination. *See Holland*, 487 F.3d at 219 (stating that "reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position").

As to the remaining elements, H&S Bakery argues that Stovall has not shown that he was performing at a level that met the employer's legitimate expectations, because he had been involved in a vehicle accident just before his termination, and that Stovall has not alleged that the person hired to replace him was from outside of his protected class. The Court finds that the

Complaint sufficiently alleges satisfactory job performance, based on Stovall's assertions that before the events at issue in this case, Stovall "had an unblemished file and an exemplary record for service and accolades," including receipt of "awards for Salesman of the Year and Perfect Attendance." Compl. at 6. During his more than 20 years at H&S Bakery, Stovall never failed a drug test or refused to take a mandatory test. Where there is no evidence that a single vehicle accident necessarily warrants termination, the Court finds that this element was satisfied.

As to the fourth element, Stovall does not claim that he was replaced by a new employee outside of his protected class. Stovall, however, appears to allege that his termination was discriminatory based on disparate, more favorable treatment of white employees who engaged in misconduct but who were not terminated. *See White*, 375 F.3d at 295. A termination based on discriminatory application of discipline can support a Title VII race discrimination claim, but "the similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008). Although they need not be identical, the plaintiff and the comparator must be "similar in all relevant respects," such as whether the employees had the same supervisor, were subject to the same standards, and did not have "such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Kelley v. United Parcel Service, Inc.*, 528 F. App'x 285, 286 (4th Cir. 2013) (quoting *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010)).

Here, Stovall has not alleged sufficient facts to support a claim of such discriminatory discipline. Stovall generally alleges that white employees are "terminated at a much lower rate than minorities," then references a white H&S Bakery employee who "berated a minority supervisor in a profanity-filled tirade and [was] deemed insubordinate," and another who was

caught stealing, and asserts that both were only suspended and not terminated for their misconduct. Compl. at 6-7. Stovall, however, has not stated whether these employees held the same or similar positions as him, had the same supervisor as him, or were subject to the same standards, nor has he provided sufficient facts about the circumstances of their misconduct or the disciplinary system at H&S Bakery to support an inference that his termination was racially motivated. *See Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010) (finding that allegations that the plaintiff "was treated differently as a result of his race than whites" and that there was a white employee who was not disciplined for outside business involvements were insufficient to state a claim of discriminatory discipline absent facts showing how the comparator's activities were improper and comparable to those of the plaintiff). Particularly where Stovall's own supervisor was African American, and, based on the information presented in the operative Complaint, Stovall has offered no allegations of any statements, actions, or other indicia of discriminatory animus based on race, the Court finds that at this stage, the allegations are insufficient to support an inference that Stovall's termination was motivated by race. *See James v. Verizon*, 792 F. Supp. 2d 861, 869–870 (D. Md. 2011) (holding that evidence that the decision maker is a "member of the same protected class" as the plaintiff "weakens any possible inference of discrimination"). The Court will therefore dismiss without prejudice Stovall's Title VII claim of race discrimination.

### B. Hostile Work Environment

H&S Bakery also seeks dismissal of Stovall's hostile work environment claim. A hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Boyer–Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015). To prove such a claim, a plaintiff must show that: (1) the

plaintiff experienced unwelcome harassment; (2) the harassment was based on the plaintiff's race, color, religion, national origin, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *Baquir v. Principi*, 434 F.3d 733, 745–46 (4th Cir. 2006). A court's determination whether such an environment exists includes a consideration of "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Boyer–Liberto*, 786 F.3d at 277 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). "[C]allous behavior by [one's] superiors," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), or "a routine difference of opinion and personality conflict with [one's] supervisor," *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 276 (4th Cir. 2000), in contrast, do not rise to the level of actionable harassment.

Here, Stovall's hostile work environment claim is based on H&S Bakery's decision to reassign him to a different delivery route, as well as later actions such as increasing surveillance after he complained about the reassignment, failing to repair his hand-held computer, requiring him to use a spare truck when a co-worker's truck needed repairs, receiving a written reprimand when the battery on his personal cell phone—used for company business—ran out of charge, and terminating him after falsely accusing him of refusing to take a drug test. Although Stovall has alleged a number of incidents that were adverse to him, he has alleged no incidents of physically threatening conduct, abusive communications, or discriminatory intimidation, ridicule, and insult that characterizes a hostile work environment. *See Boyer–Liberto*, 786 F.3d at 277; *Buchhagen v. ICF Int'l, Inc.*, 545 F. App'x 217, 219 (4th Cir. 2013) (finding that even allegations of a supervisor mockingly yelling at the plaintiff in a meeting, repeatedly harping on mistakes by the plaintiff,

making snide comments, and playing favorites with certain employees over others fell "far short of being severe or pervasive enough to establish an abusive environment").

Moreover, Stovall has not alleged facts that would support an inference that the mistreatment was motivated by racial animus. As alleged, the mistreatment began when he complained about preferential treatment of former Ottenburg drivers and his reassignment to a less desirable route in violation of the company policy on route assignments. He identifies no instances of statements or actions that could be construed as racially motivated. *See Gilliam v. S.C. Dep't of Juv. Just.*, 474 F.3d 134, 142-43 (4th Cir. 2007) (finding no actionable hostile work environment where there were no facts demonstrating differential treatment of similarly situated white personnel based on race and no "independent evidence of racial animosity"). In the absence of allegations sufficient to establish severe or pervasive harassment motivated by race, the Court will grant the Motion to Dismiss as to the hostile work environment claim.

### C. Retaliation

Stovall also alleges, and H&S Bakery seeks to dismiss, a Title VII claim for retaliation. Under Title VII, it is an "unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed . . . an unlawful employment practice" under Title VII. 42 U.S.C.A. § 2000e-3(a); *see also Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019). To establish a *prima facie* case of retaliation, a plaintiff must present facts that establish that: (1) the plaintiff engaged in a protected activity; (2) the employer took a materially adverse action against the plaintiff; and (3) that "there was a causal link between the two events." *Boyer-Liberto*, 786 F.3d at 281. To qualify as protected activity, the employment practice opposed may be either "actually unlawful under Title VII" or reasonably believed by the employee to be unlawful. *Id.* at 282 (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397 (4th

Cir. 2005)). Thus, an employee's complaint must still communicate "a belief that the employer has engaged in . . . a form of employment discrimination" based on a protected class. *Crawford v. Metro. Gov't of Nashville and Davidson Cnty.*, 555 U.S. 271, 276 (2009). To qualify as protected activity, a complaint must be of a nature that "the employer understood or should have understood" that the plaintiff was opposing a practice barred by Title VII, such as race discrimination, rather than some other practice. *Burgess v. Bowen*, 466 F. App'x 272, 282 (4th Cir. 2012).

Under this standard, complaints about management action that would not constitute unlawful discrimination do not count as protected activity. *See Parker v. Ciena Corp.*, 787 F. App'x 817, 820 (4th Cir. 2019) (holding that complaints "about general workplace grievances," such as a lack of resources and rude treatment in the workplace, did not constitute protected activity); *Bowman v. Balt. City Bd. of Sch. Commr's*, 173 F. Supp. 3d 242, 248 (D. Md. 2016) (holding that "[g]eneral complaints of unfair treatment are not protected activity"). Stovall's retaliation claim, however, is based on the allegation that he was subjected to adverse actions and then terminated in retaliation for his filing of a complaint "about the bidding process for the routes" and "the company's failure to follow the handbook procedures on putting the routes up for bid." Compl. at 4. Nowhere does Stovall allege that in his complaints to Barnes and Graham he asserted that the route reassignments constituted race discrimination. In Stovall's letter to Paterakis, he asserted that the reassignment violated "the Equal Employment Policy and the Employee Handbook," but in describing the policies that were violated he referenced specific, established procedures for the bid process and made no reference to any anti-discrimination policies. *See* Compl. Ex. A at 1-2. Thus, while Stovall may have alleged sufficient facts to support the conclusion that he was subjected to retaliation for complaining to management about the

14

reassignment of routes in violation of company policy, such retaliation was not for Stovall's engagement in protected activity and thus did not violate Title VII. The Motion to Dismiss will thus be granted as to the Title VII retaliation claim.

## IV.    42 U.S.C. § 1981

Based on the same facts underlying his Title VII race discrimination claim, Stovall also alleges that H&S Bakery violated § 1981, which provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981(a). The statute defines the term "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b). To state a claim under § 1981, a plaintiff must establish "purposeful, racially discriminatory actions that affect at least one of the contractual aspects listed in § 1981(b)." *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018 (4th Cir. 1999). When an employment discrimination claim is asserted under § 1981, the substantive elements are the same as for a claim brought under Title VII. *Bryant v. Bell Atlantic Md., Inc.*, 288 F.3d 124, 133 n.7 (4th Cir. 2002); *Sewell v. Strayer Univ.*, 956 F. Supp. 2d 658, 673 (D. Md. 2013). Accordingly, where the Court has found that Stovall's Title VII discrimination claims are subject to dismissal, it also finds that his claims under § 1981 must also be dismissed.

## V.    State Law Claims

Having dismissed all of the federal claims in the Complaint, and noting that diversity jurisdiction is inapplicable because the parties are not citizens of different states, *see* 28 U.S.C. § 1332 (2018), the Court must consider whether it retains jurisdiction over what remains in this case.

*In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998) (stating that a court has a "duty to inquire, *sua sponte*, whether a valid basis for jurisdiction exists, and to dismiss the action if no such ground appears"). Up to now, the Court has had subject matter jurisdiction over the state law claims in the Complaint because under the doctrine of supplemental jurisdiction, a federal court may exercise jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). However, a district court may decline to exercise supplemental jurisdiction over state law claims when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Where this case has yet to proceed beyond a motion to dismiss, it has not reached the point that judicial economy and fairness to the litigants would warrant retention of federal jurisdiction over the case. Thus, the Court will decline to exercise supplemental jurisdiction over the remaining state law claims, which will be dismissed without prejudice. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). As a result, the Court need not reach H&S Bakery's arguments as to why Stovall's state law claims should be dismissed on the merits.

## CONCLUSION

For the foregoing reasons, H&S Bakery's Motion to Dismiss will be GRANTED. The claims for race discrimination through discriminatory discipline under Title VII and 42 U.S.C. § 1981, as well as the state law claims, are DISMISSED WITHOUT PREJUDICE. The remaining claims are DISMISSED WITH PREJUDICE. Because all claims will be dismissed, Stovall's Motion for Pre-Trial Discovery will be DENIED AS MOOT. A separate Order shall issue.

Date: June 23, 2021

THEODORE D. CHUANG
United States District Judge

16